## J. Thomas Reinhardt

### *v*.

## The Inter-State Telephone Company.

[Submitted February 14th, 1906. Decided February 23d, 1906.]

1. Where complainant in fact owned stock in defendant corporation, he could sue for the appointment of a receiver for the corporation in insolvency proceedings, though the stock stood in the name of the broker by whom it was purchased for complainant.

2. The holder of unpaid coupons of bonds secured by a mortgage given by defendant corporation is a creditor of the corporation for the purpose of prosecuting a suit to have defendant declared insolvent and for the appointment of a receiver.

3. A suit by a bondholder of a corporation to throw it into insolvency and administer its assets for the benefit of all of its creditors is not a suit to collect the debt evidenced by the bond and secured by a mortgage, within the provision of the mortgage that no holder or holders of any less proportion than twenty-five per cent. of the total amount in value of the outstanding bonds or coupons secured thereby shall be entitled to institute any proceeding to foreclose the mortgage, or to execute the trust, or for the appointment of a receiver, or for any other remedy under the mortgage.

4. Where a corporate mortgage securing bonds attempted to forbid the foreclosure of the mortgage by the ordinary process at the instance of the holders of any of the bonds, declaring that the trustee should enforce the mortgage by entering and taking possession and selling the property without the aid of the court, and that the rights and remedies secured to the holders of the bonds as against the mortgaged premises and every part thereof should be exclusive of all others, any law or usage, present or future, to the contrary notwithstanding, such provisions were impotent to deprive the court of its inherent right to supervise the conduct of the trustee in foreclosing the mortgage.

5. Facts *held* sufficient to show that defendant corporation was insolvent, and could not within a short time resume its business with safety to the public and advantage to its stockholders, and was therefore subject to the appointment of a receiver in a suit by a bondholder, as authorized by the Corporation act, section 65. *P. L. 1896 p. 298*.

On motion for the appointment of a receiver in insolvency. Heard on bill and affidavit and answer and affidavit.

Mr. Albert ·Chandler Wall, for the complainant.

Mr. Frank S. Katzenbach, Jr., for the defendant.

PITNEY, V. C.

The complainant, Reinhardt, is the holder of eleven bonds for $1,000 each, with interest coupons annexed, dated July 16th, 1901, issued by the Inter-State Telephone Company, a corporation of this state, and secured by a mortgage made by that company to the Trenton Trust and Safe Deposit Company.

The bonds are payable in 1931, and the coupons for the interest mature on the 1st day of January and July of ·each year.

The mortgage provides for an issue of $5,000,000 in $1,000 bonds. Of these nineteen hundred and thirteen (1,913) have been issued.

The plaintiff acquired one of his bonds in July, 1904, and ten on the 14th of June, 1905.

The coupons on his bonds, which came due on the 1st·of July, 1905, were put by him in the course of collection and paid, but by whom it does not appear, the defendant denying that they were paid by it, and so far as appears none others were paid of those maturing on that day.

None of those maturing on the 1st day of January, 1906, were paid. The complainant purchased a few shares of the stock of the company in December, 1905.

On the 8th of January, 1906, he filed his bill in this court, on his own behalf and of all others who may apply to be made parties thereto, setting forth the facts hereinbefore stated, and others, to be stated farther on, and asking for an order of insolvency and the appointment of a receiver.

An order to show cause was made, returnable on the 16th of January, and on that day was adjourned to the 23d of January.

On that day the defendant appeared and filed its answer, with affidavits annexed, and the motion was argued and submitted on the affidavits annexed to the complainant's bill and those annexed to the defendant's answer.

Several objections were made to the complainant's standing, both as a creditor and stockholder, which I will now consider.

With regard to the ownership of the stock, it is alleged that the complainant purchased it on December 20th, 1905, after he knew of defendant's embarrassment, and that it was so purchased for the purpose of giving him the standing of a stockholder in a suit to be brought against the company. This is, in substance, admitted by the complainant.

The stock stands in the name of the broker who purchased it for the complainant, but belongs to the complainant. This is sufficient to give him a standing in this court, as held by me in *O'Connor* v. *International Silver Co., 68 N. J. Eq. 67*, and affirmed on appeal, *68 N. J. Eq. 680*.

With regard to his ownership of the bonds and the holding of the unpaid coupons belonging thereto, it is argued that he is not entitled to the standing of a creditor, on two grounds.

First, that an action at law under our statute of March 23d, 1881 (*P. L. 1881 p. 184; Gen. Stat. p. 2112*), will not lie for unpaid coupons, as held in *Holmes* v. *Seashore Electric Railroad Co., 57 N. J. Law (28 Vr.) 16*. That case is apparently precisely in point, in support of that proposition.

I say "apparently," for unless the verbiage of the bond and mortgage there involved is the same as that here involved, it may not be in point. A reading of the act of March 23d, 1881, whose protection is here invoked, shows that the bond and mortgage covered thereby was the well-known and time-honored bond and mortgage which had been from time immemorial in use in New Jersey, namely, a bond in a penal sum double the amount of the indebtedness, conditioned to pay the real indebtedness at the time specified. The mortgage was an ordinary common law conveyance in fee-simple, with a proviso that if the money secured in the bond should be paid according to the conditions thereof then the conveyance should be void, otherwise to remain in full force and virtue.

Now, it requires no argument to sustain the position that the act in question, being in derogation of the common law, must be construed strictly. It was so held by the late Chancellor Runyon, in *Crater* v. *Smith, 42 N. J. Eq. (15 Stew.) 348*, and his decree in that case was affirmed by the court of errors and appeals in *43 N. J. Eq. (16 Stew.) 636*, and the objects of the

law explained by the same learned judge, who spoke for the supreme court in the case cited from 57 *N. J. Law* (*28 Vr.*) *16.* In the absence of the printed record in that case, I must presume that the bond and mortgage therein dealt with were in form and character precisely within the language of the statute.

If we look at the form of the bond in the case before us, it does not answer the description which I have given. It is a mere acknowledgment of indebtedness to the trustee and is payable to bearer, and amounts to no more than a sealed bill or promissory note under seal.

Further, in order to bring the case within the prohibitory statute, the mortgage must be one which the holder of the bond can foreclose at his option, for the act declares that in all cases where a bond and mortgage had been or might thereafter be given for the same debt, all proceedings to collect the debt should be first to foreclose the mortgage, and if, after applying the proceeds of the foreclosure there should be a deficiency, suit therefor upon the bond must be brought within six months. Now, manifestly, it could not have been the intention of the legislature to bar an action on the bond unless the holder of it had a right to foreclose the mortgage at his will and option.

Here, again, it is to be remarked that the foreclosure proceedings spoken of in the statute are the well-known and time-honored proceedings by English bill, asking for a sale of the land by an officer of the court, and, after sold, a foreclosure of the equity of redemption.

Now, if we examine the mortgage here in question, we find that in its sixth article it expressly confines the remedies of the bondholders to affirmative action by the trustee, namely, that he shall enter and take possession and sell, and pay the proceeds to the bondholders, the process being given with considerable detail, and then follows this clause:

"and it being further distinctly understood, declared and decreed, any law or usage, present or future, to the contrary notwithstanding, that the rights and remedies secured to the holders of the aforesaid bonds by this indenture, and the trust therein declared, shall, as against the mortgaged premises, and every part thereof, be exclusive of all others, and especially that no part of the mortgaged premises shall be levied upon, taken into execution or sold under any judgment or decree obtained by the holder or

holders of any of the said bonds against the telephone company for the payment of either principal or interest of the bonds intended to be hereby secured, unless such judgment or decree shall have been entered for the purpose of enforcing the trust, or power of entry and sale hereinbefore contained."

Now, under these circumstances, I think, if it were necessary so to hold, that I should feel constrained to hold that the act of 1881 does not apply to this case.

But be that as it may, the question here is not whether the complainant can lawfully bring an action at law upon his coupons (which are in the ordinary form of a simple promise to pay the bearer, on the 1st day of January, 1906, at the office of the Trenton Trust and Safe Deposit Company, of Trenton, N. J., $25, in gold coin, being six months' interest on its mortgage bond numbered ——, and signed by the treasurer), but the question is whether the complainant is a creditor of the ·defendant.

It seems to me the position that he is not a creditor is hardly arguable, and the case before cited of *Smith* v. *Crater, 42 N. J. Eq. (15 Stew.) 348,* and *43 N. J. Eq. (16 Stew.) 636,* holds that he is a creditor. There a party held a bond and mortgage against a decedent whose estate was insolvent, and before foreclosing his mortgage he presented a sworn claim to the administrator, which was stricken out by the orphans court on the strength of this statute, but was reinstated and held to be valid by both the chancellor in the prerogative court and the court of errors and appeals on appeal therefrom.

And it was further held that the creditor having, after presenting his claim as just stated, foreclosed his mortgage and shown a deficiency on his bond, his claim previously presented should stand for such deficiency without any suit being brought on the bond, and after six months had elapsed after foreclosure.

Moreover, the precise question here involved was recently before Vice-Chancellor Garrison and considered by him in the unreported case of *Skiddy* v. *Lyons & Campbell Cattle Co.,* and he informs me that, after consideration, he held the holder of unpaid coupons of bonds secured by a mortgage of the defendant corporation to be a creditor for the purpose of prose-

cuting a suit to have that defendant declared insolvent, and that he so declared it and appointed a receiver.

The next objection to the complainant's standing is based on article No. 7 contained in the mortgage in the following language:

"*Article Seventh.* It is agreed that no holder or holders of any less proportion than twenty-five per cent. of the total amount in value of the outstanding bonds or coupons secured thereby shall have the right to institute any suit, action or proceeding in equity or at law for *the foreclosure of this mortgage* or the execution of the trusts thereof, *or for the appointment of a receiver, or for any other remedy under this mortgage,* and that no such suit, action or proceeding shall be instituted without first giving thirty days' notice in writing to the trustee of the fact that default has occurred and continued as aforesaid, and fully indemnifying the trustee against all loss, costs or damages arising from such suit."

It is argued by the defendant that this suit is included within that language. I do not so construe it. The bill is an ordinary bill, filed under the sixty-fifth section of the Corporation act of 1896, and it alleges, in the tenth and last paragraph, that the company is insolvent, and cannot carry on its business with safety to its creditors or stockholders, and that the company cannot resume business with safety to the public or with advantage to its stockholders, and prays that the company may be decreed to be insolvent; that an injunction in the usual form may issue, and that a receiver may be appointed.

This shows that the bill is not a suit to enforce or collect the debt due to the complainant, but is simply a statutory suit to throw the company into insolvency and administer its assets in this court for the benefit of all the creditors.

The defendant relies upon a decision of Judge Goff, in the circuit court of the United States, in *McGeorge* v. *Big Stone Gap Improvement Co., 57 Fed. Rep. 262.* But that case does not cover this, for two reasons. In the first place, the language of the clause relied on in that case is different from that in the present case, and in the second place, the object of the suit was quite different from that in this case.

That was not a suit to throw the company into insolvency, but

rather for the appointment of a receiver to manage the affairs of the company, based on the alleged misconduct of those in control.

The language in the clause in that case was this:

"No suit, action or proceeding in law or in equity for the foreclosure of this mortgage or deed of trust, or the execution of the trust therefor, *or for any other remedy*, shall be brought or instituted except by, through or in the name of the trustee for the time being, and then only after notice in writing,   *   *   *   and upon the request in writing of one-fifth in amount,   *   *   *   and the offer to the trustee of adequate security and indemnity,   *   *   *   and such request and offer of indemnity are hereby declared to be conditions precedent for the execution of the powers and trusts of this mortgage to any action or cause of action for the foreclosure *or for any other remedy hereunder*."

In the case in hand the prohibition is against instituting any suit or proceeding in equity or at law for the foreclosure of this mortgage, or for the appointment of a receiver, or for any other remedy *"under this mortgage."*

Now, I construe that as meaning that no action based on the mortgage, whether in equity or at law, shall be brought, and that the receiver whose appointment is forbidden is a receiver under the mortgage, and that the clause does not apply to the present case.

If we look farther at the mortgage in this case we shall find, as before remarked, that it actually forbids, or attempts to do so, the foreclosure of the mortgage by the ordinary process at the instance of the holders of any of the bonds, for it provides that the trustee shall enforce the mortgage by entering and taking possession—apparently by the strong hand—and proceed to sell the property without the aid of any court. Then follows a clause providing

"that the rights and remedies secured to the holders of the aforesaid bonds by the mortgage shall, as against the mortgaged premises, and every part thereof, be exclusive of all others, any law or usage, present or future, to the contrary notwithstanding."

And it provides that the mode of sale fixed by the mortgage shall be exclusive of all others.

I think it safe to affirm that clauses of that character, restrictive of the common-law right of a creditor who holds a plain obligation of his debtor, are not favored by the courts, and such clauses must be strictly construed. It was so held by the supreme court of the United States, in *Guaranty Trust Co.* v. *Railroad Company, 139 U. S. 137.* At *p. 142,* the court says: "We think such limitations upon the power of the trustee to take legal proceedings to enforce payment of the amount secured should be strictly construed."

And then, farther on, it says: "It is true there is a subsequent provision in the deed of trust to the effect that 'neither the whole nor any part of the premises shall be sold, under proceedings either at law or in equity, for the recovery of the principal or interest of the bonds, it being the intention and agreement of the parties that the mode of sale provided by the mortgage shall be exclusive of all others.' This clause, however, is open to the objection of attempting to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the courts, which, as is settled by the uniform current of authority, cannot be done." Citing numerous authorities.

I am of the opinion that the clauses in the mortgage now under consideration are impotent to deprive this court of its ancient and inherent right to supervise the conduct of trustees in the execution of their trusts.

The third point made by the defendant is that it is not insolvent within the meaning of that word as used in the sixty-fifth section of the Corporation act, and has not arrived at the condition when "it is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders." It avers that it has not suspended its business, but is carrying it on without interruption.

So far as can be inferred from the answer and affidavits the defendant owns little or no visible property, and perhaps conducts little or no business directly. It was organized for the purpose of purchasing and holding the capital stock of several telephone companies located in different towns and cities of this state and the adjoining State of Pennsylvania, and expended its

capital stock and some of its bonds in purchasing the whole or a controlling majority of the capital stock of these companies, and, presumably, operates them through their original local organization.

The expense of carrying on the business of each of those organizations may be entirely covered by the receipts therefrom, and thus the business kept going, and yet there may be no surplus to pay the interest accruing on the cost of those local systems to the defendant company.. This, as I understand, is precisely what has happened, as shown by the defendant's affidavits. Defendant makes no promise and expresses no hope that it is now or soon will be ready to pay the coupons on its bonds which fell due in July, 1905, and again in January, 1906, or those which will mature hereafter.

In the face of this default, counsel argues that so long as it keeps its telephone system in operation it is not insolvent, because it has not stopped its ordinary business. Its position is this: "The New Jersey statute will not permit us to be sued on our overdue coupons, and the terms of the mortgage will not permit it to be foreclosed except at the will of the trustee in the peculiar manner therein set forth. Our business is being conducted without interruption, and so our creditors are helpless."

Can such a position be tolerated by a court of justice? I think not.

The language above quoted from the sixty-fifth section of the present Corporation act had its origin in the act of February 16th, 1829. *Harr. Comp. 214.* At that time corporations had not assumed such a variety of forms and undertaken such a variety of functions as the ingenuity of lawyers and the exigencies, real or supposed, of modern business transactions have since evolved. These require that the language in question should be liberally construed to meet the varying circumstances, and that has been the course of our courts.

The test that has been adopted is this: Can the corporation, in the present or near future, meet its maturing pecuniary obligations? Such was the view of Chancellor McGill, in *Fort Wayne Electric Corporation* v. *Franklin Electric Light Co., 57*

*N. J. Eq. (12 Dick.)* 7 (*1898*), where he says (at *p. 13*) : "In-solvency carries with it inability to presently pay indebtedness and suspension of that function, and the word 'resume,' used in the statute, is, I think, to be taken in the sense of taking up again that suspended function, so that payment of indebtedness, as well as the operation of the work of the corporation, after temporary, partial or complete paralysis, may be 'resumed' with safety to the public and advantage to its stockholders."

And of late years numerous corporations have been adjudged insolvent and receivers appointed therefor without any inter-ruption of their business and before any debt has actually matured without payment, on proof merely that the corporation would be unable to meet its immediately maturing obligations, and that a scramble would ensue among its creditors, resulting in inequality of distribution of its assets. It is common prac-tice to declare railroad, gas and water companies, and other public service corporations, insolvent, and appoint a receiver, without the least interruptions of their public functions.

The proofs in this case, found in the affidavit of one of its directors annexed to the answer, show that in the summer of 1905, after the default which the defendant admits it made in the payment of its interest coupons maturing July 1st, a meet-ing of a large number of its bondholders was held, and the situ-ation of the company investigated and considered, and a scheme of reorganization devised and adopted.

But the defendant says it is not responsible for the action of those bondholders. That may be, but the situation remains, namely, that the very respectable and efficient business men who fill its offices do not offer anything better and manifest no ability in that direction.

One of the directors and the vice-president of the company, whose affidavit is annexed to the answer, and who was one of the committee of bondholders who have devised the plan for reorganization, states in his affidavit the circumstances under which that plan was devised, and that the condition of the com-pany was thoroughly examined and considered by that com-mittee. That committee, in August, 1905, sent out a circular letter to each bondholder and creditor, accompanying a pro-

posed agreement to be signed by every creditor, and which comprised the plan of reorganization in detail. That circular letter commences in this wise:

"DEAR SIR—Of course you are aware that the Inter-State Telephone Company defaulted in respect to the interest due on mortgage bonds on July 1st, 1905. It is also quite apparent that the company will not be able to meet the interest maturing on January 1st, 1906, *nor the periodical payments semi-annually maturing for some time thereafter.*"

It seems to me, under these circumstances, it is impossible to say that the company is not insolvent.

But, say the defendant, the company is in good hands; it is being well managed and no creditors are pressing, and grant that it is insolvent, yet the court ought not to throw it into the hands of a receiver, but should allow a majority of the bondholders to reorganize it.

Let us see just what the situation is.

The complainant owns eleven bonds out of nineteen hundred and thirteen, which are the only bonds secured by this mortgage, and are clearly, in equity, entitled to be paid out of the proceeds of the sale of all the property of the company. Besides these nineteen hundred and thirteen bonds, the defendant company, in 1901, borrowed $400,000 in cash, as is alleged by the defendant, and agreed to issue bonds therefor out of the main issue of $5,000,000 as soon as the physical condition of the property owned by the company should justify the trustee in issuing those bonds, there being a restriction in the mortgage against issuing bonds faster than a certain condition of the wires and poles and telephone machines existed—that is, they were not to be issued any faster than the enlargement of the works of the company progressed. Upon that unsecured debt of $400,000 interest has accrued to the extent of $80,000. Besides that there is a floating debt, not previously mentioned, of between $30,000 and $40,000, making altogether an unsecured indebtedness of over $500,000; and, further, a pressing indebtedness of one of the corporations owned by the defendant of $30,000.

Now, the plan of reorganization is that the old mortgage should be disposed of, either by foreclosure or universal consent,.

and two new mortgages made, viz., a first mortgage for $1,-000,000 and a second mortgage for $4,000,000, to secure the indebtedness, which is as follows:

| | | |
|---|---:|---:|
| Bonds actually issued | | $1,913,000 |
| Bonds due to be issued, which have already been paid for | | 400,000 |
| Total bond issue | | $2,313,000 |
| Floating debt, approximately | $40,000 | |
| July, 1905, coupons | 50,000 | |
| Accrued interest for four years, from July 1st, 1901, to July 1st, 1905 | 80,000 | |
| Underlying bonds | 30,000 | |
| | | 200,000 |
| | | $2,513,000 |

Further, according to the plan of reorganization, the creditors must pay in fifteen per cent. of their several claims, which will amount to $353,000, to be used by the new company in increasing its plant.

For such an advance in cash the creditors are to receive payment in first mortgage bonds of $1,000,000 at eighty cents on the dollar for the bonds, and the balance of $1,000,000 to be retained and issued for improvements. For their original indebtedness the creditors are to receive second mortgage bonds.

The result is that the present bondholder is put on a basis with the unsecured creditors and receives bonds secured by a second mortgage and is compelled to loan the company additional money.

The gain to the company, over and above the cash which it will receive, is the extinction of the limit under the mortgage against the issue of bonds any faster than is warranted by the property which is pledged to pay them.

Now, it is manifest and is conceded that unless every creditor consents, there must be a sale of this property, either under the mortgage or by a receiver, either clear of the mortgage or subject to it. The peculiar provisions of the sixth section of the mortgage, which has already been alluded to, gives the trustee power to sell without judicial process, but this cannot be permitted by

6

this court if any creditor shall object. It is both within the power and it is also the duty of this court to supervise such a sale at the instance of any creditor interested in it. The complainant, as the holder of only eleven bonds, could hardly be refused if he asked the aid of this court in that behalf.

He is not only entitled to the supervision of the court in the conduct of the sale, but to the aid, so to speak, of the court in seeing to it that the property shall bring its full value, and that the sale shall not be a mere nominal one for the purpose of merely extinguishing the present mortgage.

He contends that all this can be done by the receiver, who will represent the creditors, including the bondholders, and in the meantime will see to it that the current income of the property is properly applied and confined to the payment of the current expenses, and the surplus, if any, be reserved for the mortgagee.

Upon the whole case, then, I am of opinion as follows:

*First.* That the complainant is a creditor of the defendant corporation, and has a standing in this court to invoke its statutory action in the way of appointing a receiver.

*Second.* That such action is not forbidden by the terms of the mortgage securing his debt.

*Third.* That the defendant is insolvent, in the sense in which that word is used in the statute.

*Fourth.* That a receiver should be appointed.

Such appointment will not necessarily or naturally interfere with the present conduct of the daily routine or business of the company, or displace any of its active servants and employes.

I will hear counsel as to the choice of a receiver.