CENTRAL ELECTRIC CO. v. SOCORRO ELECTRIC CO. et al.†

(Circuit Court of Appeals, Eighth Circuit. November 5, 1913.)

No. 3,983.

CORPORATIONS (§ 542*)—VALIDITY OF MORTGAGE—"INSOLVENCY"—NEW MEXICO STATUTE.

Under Laws N. M. 1905, c. 79, § 71, providing that, "whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign, or transfer any of its estate, effects * * * provided that a bona fide purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency, * * * shall not be invalidated or impeached," an electric company, which, before the completion of its plant, became unable to meet its ordinary obligations as they matured for lack of funds or credit, and stated to its creditors that unless they made liberal discounts it would be compelled to go into insolvency, and thereby obtained settlements with most of its creditors for 75 cents on the dollar, was insolvent within the meaning of the statute, and a mortgage executed at that time to secure an issue of bonds purchased by its directors, who foreclosed and bought in the property within two years, paying the purchase price with the bonds, is void as to a creditor which refused to compromise its claim.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154–2160; Dec. Dig. § 542.*

For other definitions, see Words and Phrases, vol. 4, pp. 3647–3655; vol. 8, p. 7689.]

Appeal from the District Court of the United States for the District of New Mexico; William H. Pope, Judge.

Suit in equity by the Central Electric Company against the Socorro Electric Company and others. Decree for defendants, and complainant appeals. Reversed.

H. B. Jamison, of Albuquerque, N. M. (Vigil & Jamison, of Albuquerque, N. M., on the brief), for appellant.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

CARLAND, Circuit Judge. This is a creditor's bill brought by the Central Electric Company against the Socorro Electric Company, Har-

ry M. Dougherty, trustee, Aniceto C. Abeytia, Joseph E. Price, James G. Fitch, C. T. Brown, E. A. Drake, and A. W. Chase, as directors of the Socorro Electric Company, for the purpose of having set aside and held for naught a certain mortgage or deed of trust made by the Socorro Electric Company April 8, 1909, to Harry M. Dougherty, trustee, whereby the company conveyed to said trustee all of its property, both real and personal, situate in the city of Socorro, territory of New Mexico, for the purpose of securing the payment of the bonds of said company aggregating $15,000, as being in violation of section 71, c. 79, of the Laws of the Territory of New Mexico of 1905. The action was commenced in the district court for the county of Socorro, territory of New Mexico, and afterwards removed to the District Court of the United States for the District of New Mexico under the provisions of an act to enable the people of New Mexico to form a Constitution and state government, approved June 20, 1910. The case was heard in the court below on the pleadings and proofs, resulting in a decree dismissing the bill, from which decree this appeal was taken.

The material facts, as they appear in the evidence and the findings of the trial court, are as follows:

The Central Electric Company is a corporation organized and existing under the laws of the state of Illinois. The Socorro Electric Company is a corporation organized and existing under the laws of the territory (now state) of New Mexico. Aniceto C. Abeytia, James G. Fitch, C. T. Brown, and E. A. Drake, named as defendants, were at the time of the execution of the deed of trust directors of the Socorro Electric Company. The defendant Joseph E. Price became a director of the company June 28, 1909. The Central Electric Company recovered judgment in the district court of the county of Socorro against the Socorro Electric Company July 7, 1910, for $3,795.47, with interest thereon at the rate of 6 per cent. per annum from said date until paid. An execution was issued on said judgment directed to the sheriff of Socorro county, and on March 2, 1911, was returned unsatisfied. On April 8, 1909, the Socorro Electric Company made, executed, and delivered to the defendant Harry M. Dougherty, trustee, a mortgage or deed of trust conveying the property described in the bill, which constituted all of the property and assets of the Socorro Electric Company, and it had no other property or assets out of which to satisfy the claims of its creditors, including the judgment above mentioned. The mortgage or deed of trust was given to secure the payment of bonds, as hereinbefore stated. The mortgage or deed of trust and the bonds to secure which said deed of trust was given were executed, issued, sold and disposed of for cash in pursuance of a resolution passed at a meeting of the stockholders of the said Socorro Electric Company held for that purpose on April 2, 1909, in order to raise money to pay off its indebtedness and put the plant of the company in proper working order. At the time this deed of trust was authorized, the Socorro Electric Company had stated to its creditors that it was unable to pay them in full. At the time the Socorro Electric Company was organized, one E. L. Wood induced citizens of Socorro to contribute and take stock in said company to the amount of nearly

$10,000, upon his assurance that he would take all the remaining stock and as a consideration therefor would erect a complete plant and put it in successful operation and make all extensions of lines. He commenced to operate the plant in September, 1908, and continued said operation until shortly before his resignation as manager on February 8, 1909. He entirely failed to keep his contract to put up the balance necessary to complete the plant and was found to be hopelessly insolvent; the plant being left in an incomplete condition and not suitable for the purposes for which it was intended. He was very extravagant in the matter of its erection and incurred indebtedness over and above the amount contributed by the stockholders of about $12,-000. During the time the plant was run, it was greatly injured by his lack of experience, which resulted in numerous breakdowns, and a deficit in the cost of operation of about $100 per month, all of which facts were known to the directors as early as January, 1909.

Up to the 1st of February, 1909, the plant of the Socorro Electric Company had been very inefficiently managed, and this had resulted in considerable damage to the machinery and plant. The Socorro Electric Company, through its officers, represented to its creditors in January, 1909, that it was evident that unless the company could raise more money among the citizens of Socorro it would be compelled to go into liquidation and a receiver be appointed; that it would be impossible for the company to raise sufficient funds even by mortgaging its plant, lines and franchises, unless the creditors of the company were willing to discount their bills liberally; and that if they would not it would be useless for the stockholders or directors to advance what could be raised, and a receivership would probably· be necessary. At the time the deed of trust and bonds were authorized, the Socorro Electric Company had stated to its outside creditors that it was unable to pay them in full, and settled with all of such creditors, with the exception of the Central Electric Company and two or three others, for 75 cents on the dollar, which settlement the Central Electric Company refused. The plant of the Socorro Electric Company was never operated at a profit either prior to the time the mortgage and bonds were authorized, or afterwards. It was cramped for funds from its organization, and went into the hands of a receiver in June, 1910, the receiver being compelled to issue receiver's certificates immediately, in order to obtain funds with which to pay the· operating expenses of the plant. At the time the deed of trust and bonds were authorized, the Socorro Electric Company had exhausted its general credit at the banks and elsewhere and· was unable to raise any money without obtaining personal indorsements or by deed of trust covering its entire plant, and the plant contained as a part of its equipment valuable material and machinery unpaid for of the original cost price of $10,000, including the machinery and property sold by the Central Electric Company to the Socorro Electric Company, and for which the former obtained judgment against the latter. At the time the said deed of trust and bonds were authorized, the Central Electric Company was threatening the suit which afterwards resulted in the judgment hereinbefore mentioned. On April 20, 1909, in a letter written by the authority of the Socorro Electric Company to the attorney of the Cen-

tral Electric Company, who had the claim upon which suit was threatened in his hands for collection, it was stated that 75 per cent. was all the Socorro Electric Company could raise towards the payment of said claim. Subsequently, Dougherty, as trustee of the bondholders, commenced an action against the Socorro Electric Company, and such proceedings were had therein that a decree of foreclosure was entered, and all the property conveyed by the mortgage or deed of trust was sold to Joseph Price for the benefit of himself and the other bondholders of said company; the purchase price being paid in the bonds of the company secured by the deed of trust. The defendant A. W. Chase was never a director of the Socorro Electric Company. The bonds of the company were sold at par to the following named parties in the following amounts:

C. T. Brown ......................................................... $3,500
E. A. Drake ......................................................... 3,500
The Socorro State Bank, by Joseph Price, its president.............. 3,500
James G. Fitch ...................................................... 2,000
James G. Fitch, as guardian of Mary Fitch........................... 1,200
A. L. N. Fitch ...................................................... 300
H. A. True, by C. T. Brown .......................................... 1,000

Each of the above-named purchasers of the bonds paid into the treasury of the Socorro Electric Company, in money, the full par value of the bonds so respectively purchased by him. The money arising from the sale of said bonds was used in paying the indebtedness of the Socorro Electric Company, except the indebtedness due the Central Electric Company, and in repairing and improving the plant.

Counsel for the Central Electric Company requested the trial court to find, among other facts:

"That at the time the said deed of trust and bonds were executed, issued, and sold, the Socorro Electric Company was insolvent and unable to meet its pecuniary liabilities in the ordinary course of business as they matured, which facts were well known to the stockholders and directors of said company and to the purchasers of said bonds at the time they purchased the same."

The court refused to make this finding, but found as a conclusion of law that the Socorro Electric Company was not insolvent at the time of the authorization and issuance of the deed of trust and bonds, and that said deed and bonds were not issued in contemplation of insolvency; which conclusion of law resulted in the dismissal of the bill.

Section 71, c. 79, Laws of New Mexico 1905, upon which the bill in this case is founded, reads as follows:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements; nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency, and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors:  Provided, that a bona fide purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business. by any person without notice of such insolvency or of the sale

being made in contemplation of insolvency, shall not be invalidated or impeached."

We think the trial court erred in refusing to find as requested by counsel for the Central Electric Company. There is abundant evidence in the record to support such a finding as we understand the meaning of the word "insolvent" as used in the law of New Mexico, above quoted. The trial court stated in its memorandum opinion, as one of the reasons which controlled its judgment, the fact "that the value of the defendant's (Socorro Electric Company) property at the date of the deed of trust considerably exceeded its liabilities." There is no finding to this effect in the formal findings of the court, and, if. the statement in the opinion could be considered as a finding, there was no evidence introduced at the trial to sustain it. There are certain affidavits in the record which were used in opposition to the motion for a temporary injunction which contain some statements in regard to the property of the Socorro Electric Company, but no evidence was introduced at the trial along that line. It was assumed by the trial court, and it is claimed here by counsel for the Central Electric Company, that the law under consideration was taken word for word from a law of New Jersey passed in 1896, and the familiar rule is invoked that when New Mexico adopted the statute of New Jersey she adopted the construc-. tion which the courts of that state had placed upon it. The Supreme Court of New Mexico, in the case of Department Store Co. v. Gaus-Langenberg Hat Co., 125 Pac. 614, states that the law was taken from New Jersey, and in its opinion in that case further says:

"It is apparent, from the foregoing, that there was no question upon the pleadings as to the insolvency of the plaintiff in error; it being admitted that it was unable to meet its pecuniary obligations as they matured. Empire State Trust Co. v. Trustees of Fisher, 67 N. J. Eq. 602, 60 Atl. 940, 3 Ann. Cas. 393; Catlin v. Vichachi Mining Co., 73 N. J. Eq. 286 [67 Atl. 194]; Reinhardt v. Interstate Telephone Co., 71 N. J. Eq. 70 [63 Atl. 1097]."

Following the rule above referred to, the trial court relied upon the following cases as sustaining its judgment: Regina Music Box Co. v. Otto, 65 N. J. Eq. 582, 56 Atl. 715; Reed v. Helois Co., 64 N. J. Eq. 231, 53 Atl. 1057. The first case cited was a creditor's suit brought to set aside a mortgage because it was said to have been given by F. G. Otto and Sons, a corporation, while insolvent or in contemplation of insolvency. After quoting section 64 of the Corporation Act of 1896 (Laws 1896, p. 298), which is identical with the statute of New Mexico, the court said:

"This section is identical with section 2 of the old act to prevent frauds by incorporated companies and must receive the same construction. Frost v. Barnert, 56 N. J. Eq. 291 [38 Atl. 956]. It forbids the preference of any creditor after insolvency, known or contemplated (Wilkinson v. Bauerle, 41 N. J. Eq. 635, 641 [7 Atl. 514]), but does not invalidate a bona fide purchase for value, made before the company had actually suspended its ordinary business by a person not having notice."

The facts in the case cited were stated by the court as follows:

"The evidence in the case at bar shows that Otto & Sons had up to May, 1903, carried on an established business of many years' standing, successfully; that it did not suspend its ordinary business until that time; and that its

assets in the spring of 1900 exceeded its liabilities by $200,000. One of its selling agents (Paillard & Co.) had become embarrassed. It was thought that this embarrassment had been caused by bad management, and so, by resolution of April 14, 1899, Gustav Otto, its president, was authorized to take it into his own hands. This he did, but without success. When Paillard & Co. failed, Otto & Sons became straitened for funds, and the notes of which I have spoken—which seem to have been nearly all Paillard paper—went to protest. This created an embarrassment, which was, as I have said, met: (1) By a loan of $40,000 from the president of the East River bank; (2) by an issue of bonds to secure the Paillard paper held by that bank; (3) by an arrangement with the Hoboken bank by which a director first mortgaged and then conveyed certain property of his own in satisfaction of its claim; (4) by an arrangement with the Germania bank, which I must assume was satisfactory to it, for there is no evidence that it pressed its claim. An extraordinary emergency was met by these means, and the company went on. I fail to find in these facts such clear evidence of insolvency, actual or contemplated, on April 1, 1900, as compels me to avoid the mortgage in controversy."

Reed v. Helois Co., supra, was a foreclosure case. The court held the mortgage good for a part of the amount it secured, and void as to the other part. In reference to the statute of New Jersey, the court said:

"The statutory prohibition against the transfer of assets of corporations which are insolvent, or in contemplation of their insolvency, first appears in the statute of 1829. P. L. of 1829, p. 58, § 2. It is entitled 'An act to prevent frauds by incorporated companies.' It continued to be a part of the statutory laws of this state until the revision of the year 1875. In the revision of that year this provision was omitted, but was re-enacted on the 5th of March, 1895. P. L. of 1895, p. 166. It is now a part of the General Corporation Act of 1896. * * *

"The prohibition is against transfers of the corporation's property in contemplation of its insolvency. I do not understand this prohibition to be applicable to conveyances made in good faith by the officers of a corporation at a time when the financial embarrassments of the company are such that its insolvency may be within contemplation, if, as incidental to, and essentially a part of, the conveyance made, a present consideration moves to the company. For instance, if a mortgage be given to secure the payment of money paid in good faith to the company coincidently with the delivery of the mortgage; or a purchase-money mortgage be given to secure the payment of the purchase-money of land conveyed to the company coincidently with the making of the mortgage; or if property be in good faith transferred to the company, and its property, or money, be given in exchange therefor. In all such cases the value of the assets of the company is not materially changed. It is as solvent after such a transaction as it was before."

We do not think these cases rule the case at bar. The facts in the first case were entirely different, and the principle stated in the second case is simply to the effect that, if a corporation is solvent, the giving of a mortgage for cash presently advanced to the corporation does not change its financial condition. So, in the case at bar, if the Socorro Electric Company was insolvent within the meaning of the statute when it gave the deed of trust, then the fact that the bonds which the deed secured were sold at par for cash, and the money used to pay some of the indebtedness of the company and improve the plant, did not change its financial condition. The bonds were simply substituted as an indebtedness for the outstanding indebtedness which was paid from the proceeds of the bonds. The Reed mortgage was held valid

as to a portion of the amount which it secured, for the reason that the statute did not apply to so much of the mortgage as represented actual cash advanced at the time the mortgage was given.

Some other cases decided by the Chancery Court of New Jersey may be noticed. In National Bank of the Metropolis v. Sprague, 21 N. J. Eq. 530, the court said:

"The second question regards the validity of the trustee mortgage, bearing date September 1, 1866, acknowledged October 8, 1866, recorded October 10, 1866, and filed as a chattel mortgage, October 15, 1866, given to secure 100 bonds of $1,000 each, payable in three years to blank or bearer. It is abundantly proved that, when this mortgage was executed, Sprague and Stokes were pressed by their creditors for payment or security for their claims, unable to meet their pecuniary engagements, and involved in debt to an amount beyond their ability to pay, and that their creditors were informed of their condition. Under this state of facts, Sprague and Stokes, in contemplation of law, were insolvent. 'Insolvency' means a general inability of a debtor to answer pecuniary engagements, and it does not follow that he is not insolvent because he may ultimately have a surplus after winding up his affairs. Sug. on Vendors, 668; Bayly v. Schofield, 1 Maule & S. 338; Hall v. Swift, 4 Bingham's N. C., 381."

Skirm v. Eastern Rubber Mfg. Co., 57 N. J. Eq. 180, 40 Atl. 769, was a case arising under the New Jersey statute. The court in this case quoted with approval the language above quoted from National Bank of the Metropolis v. Sprague, and cites numerous authorities in line with the New Jersey rule. In Reinhardt v. Interstate Telephone Co., 71 N. J. Eq. 70, 63 Atl. 1097, a failure of the telephone company to pay interest due was held to constitute insolvency under the sixty-fifth section of the Corporation Act.

In Catlin v. Vichachi Mining Co., 73 N. J. Eq. 286, 67 Atl. 194, the court, after having defined "insolvency" as a general inability to meet pecuniary obligations as they mature by means of available assets or an honest use of credit, said:

"Applying these definitions to the case in hand, we find: (1) A going business which is losing money by its operation; (2) that it is seriously embarrassed for want of funds to carry out the project for which the corporation was organized; (3) a call loan, which the company has no means of satisfying; (4) an unsatisfied judgment pressing for payment, which it does not have sufficient funds to meet; (5) an admission of its perilous condition contained in the scheme for financing and continuing the company's operations; (6) an inability to convert its assets into cash, and, indeed, according to the defendant's own showing, a total lack of available assets with which to carry on the business and pay its present debts.

"These circumstances convince me that the company is brought directly within the section of the statute referred to, and that it is insolvent, and its affairs should be wound up by a receiver."

In addition to the above authorities, the following cases may be cited: 11 Enc. of Law, 168; Thompson v. Thompson, 4 Cush. (Mass.) 127; Bayly v. Schofield, 1 M. & S. 338; Shone v. Lucas, 3 Dowl. & R. 218; Buchanan v. Smith, 16 Wall. 277, 308, 21 L. Ed. 280; Sugd. Vend. & P. 668; Hall v. Swift, 4 Bing. N. C. 381; Brouwer v. Sanger, 2 Y. & J. 459; Bouv. Inst. 187; Sewell v. Cape May, etc. (N. J.) 9 Atl. 785.

There can be no question that under the authorities the Socorro Electric Company was insolvent when the deed of trust was given, and we need not further inquire whether it was given in contemplation of insolvency. This being so, the statute made the deed of trust utterly null and void as to the Central Electric Company.

There are certain other features of the case which a court of equity must not overlook. The men who purchased all the bonds, either for themselves or some other party whom they represented, were directors of the corporation, and by April 1, 1911, the trust deed had been foreclosed, the property of the corporation sold, and Price had bid the same in for himself and the other bondholders; the purchase price being the bonds which the deed of trust secured. At the time Price bid in the property at the foreclosure sale, which he states was April 1, 1911, the present suit had been commenced against him and the other bondholders, and he had full notice of what might be the result of the action. The evidence shows that the purchasers of the bonds paid a valuable consideration for them, but it fails to show the other two necessary provisions in order to exempt them from the operation of the statute, namely, good faith and want of notice.

We do not stop to consider whether the trust deed would be voidable by the Central Electric Company on general principles of equity (Northern Pac. R. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931; Central Imp. Co. v. Cambria Steel Co., 201 Fed. 811, 120 C. C. A. 121) as counsel for appellant stands upon the statute, and there seems to be no necessity for going further.

The judgment of the District Court, therefore, will be reversed, and the case remanded, with instruction to the trial court to enter a decree setting aside the deed of trust and declaring the same null and void, and otherwise proceed in the case as law and justice may require.