The bill alleges that defendant, a corporation of New Jersey, has become insolvent and it prays that the court may issue the injunction prescribed by section 65 of the Corporation act (Comp. Stat. p. 1640), and may appoint a receiver for the creditors and stockholders of defendant. Defendant answers first, that it is not insolvent, and second, that complainants are precluded by their contract from maintaining the bill.
Complainants are creditors of defendant, holding its sealed *Page 175 
promissory notes in the principal sum of $7,000, dated December 30th, 1922, and matured January 1st, 1933. The notes or bonds, as they are called in the papers before me, are part of an issue aggregating originally $6,000,000. The terms of the contract between defendant and the bondholders are found partly in the bonds themselves and partly in a separate instrument called the trust indenture made between the defendant and the New York Trust Company. The bonds are unsecured by the pledge of any property. The indenture is merely a lengthy contract setting forth at large the duties of the company in respect to the bonds and certain restrictions upon the rights of the bondholders. Part of these provisions here follow:
"Section 6. All rights of action on or because of the bonds and interest coupons or any of them, or under this indenture, except as hereinafter provided, are hereby expressly declared to be vested exclusively in the Trustee, and such rights may be enforced by the Trustee without the possession of any such bond or interest coupon. No holder of any such bond or interest coupon shall have any right to institute any suit, action or proceeding for the enforcement of any of the terms of this agreement or of such bonds or coupons without first giving to the Trustee written notice that one or more of the events of default hereinabove mentioned has accurred, nor unless the holders of one-fourth in principal amount of the then outstanding bonds shall have requested the Trustee in writing and shall have afforded it reasonable opportunity to institute such action, suit or proceeding in its own name, and shall have offered indemnity satisfactory to the Trustee, and shall have deposited their bonds with the Trustee if so requested by the Trustee; but if the Trustee shall have failed to take such action for sixty days after such written notice, request, offer of indemnity and deposit of bonds, the holder of any bond or bonds may proceed thereon.
Section 7. Notwithstanding any other provisions hereof, the holders of three-fourths in principal amount of the bonds outstanding may, at any time, by written notice to the Company and to the Trustee, waive any default and its consequences, except default in payment of the principal of the bonds at their maturity by lapse of time."
Each bond expressly refers to the indenture "for a statement of the rights of the holders of said bonds." Complainants, since they took the bonds subject to the covenants of the indenture, are bound by the provisions above quoted.
In Reinhardt v. Inter-State Telephone Co., 71 N.J. Eq. 70,
Vice-Chancellor Pitney appointed a receiver of an insolvent *Page 176 
corporation upon application of a bondholder. The bonds were secured by mortgage narrowly limiting the right of bondholders "to institute any suit, action or proceeding in equity or at law for the foreclosure of this mortgage or the execution of the trusts thereof; or for the appointment of a receiver, or for any other remedy under this mortgage." The vice-chancellor said: "I think it is safe to affirm that clauses of that character restrictive of the common law right of a creditor who holds a plain obligation of his debtor, are not favored by the courts and that such clauses must be strictly construed." The bill before him was a statutory bill of the same kind as the one now before me. He held that this was not a suit to enforce or collect the debt due to complainant or a suit under the mortgage, and that the suit was not barred by the provisions in the mortgage, to which I have referred.
In Hoyt v. E.I. du Pont de Nemours Powder Co., 88 N.J. Eq. 196,
Vice-Chancellor Backes held that "the provision in the trust deed requiring a demand by twenty-five per cent. in value of the bondholders to move the trustee to action, restricts collection or foreclosure proceedings, but is not a limitation upon the inherent rights of bondholders to protect their interests." The terms of the covenant are not set forth in the opinion. The court enjoined a reorganization scheme which would have impaired the security of the bondholders.
Section 6 of the indenture now before the court first vests exclusively in the trustee "all rights of action on or because of the bonds and interest coupons, or any of them, or under this indenture;" then limits the right of bondholders to institute a suit "for the enforcement of any of the terms of this agreement or of such bonds or coupons." The two provisions are complementary and may each be used to aid in interpreting the other. The trustee is not either a stockholder or creditor of defendant and, despite the covenant vesting in it rights of action on the bonds, coupons and the indenture, I doubt (though I need not decide) if it could maintain a suit under our Corporation act for winding up the affairs of defendant. On the other hand, I am clear that complainants *Page 177 
did not, by assenting to the terms of the indenture, agree with defendant that they would not, as creditors of defendant, file a bill against it under section 65 of the Corporation act. The suit is not brought for the enforcement of the indenture or the bonds or coupons. Proceedings like the present one have been called equitable quo warrantos. Smith v. Washington CasualtyInsurance Co., 110 N.J. Eq. 122. The decree, pursuant to the statute, divests the corporation of all its property and vests it in a receiver in trust to liquidate and distribute among creditors and stockholders as their interests may appear. When the bill comes on for hearing, the complainant loses control of the proceeding. He can no longer procure a dismissal of the bill and the suit proceeds even against his will. Naspo v. SummitSweets Shoppe, Inc., 106 N.J. Eq. 49. The claim of a complainant who alleges that he is a creditor may eventually be disallowed by the receiver and by the court, but even this does not affect the regularity of the proceeding or the orderly winding up of the corporation.
Complainants are not barred by their covenant from maintaining the suit.
Is defendant insolvent? It has presented a balance sheet as of November 30th, 1932, here summarized:
Cash, notes and accounts receivable ........................ $2,456,187
Materials on hand .......................................... 1,049,074
Properties and franchises .................................. 37,857,800
Miscellaneous .............................................. 3,559,869
 ____________
Total assets ............................................... $44,922,930
Bonds due January 1st, 1933 ..................... $3,332,000
Current liabilities ............................. 759,883
 __________ $4,091,884
Debts not due .............................................. 924,500
Miscellaneous .............................................. 23,500
Capital, surplus and reserves .............................. 39,883,046
 ____________
Total liabilities .......................................... $44,922,930

It will be noted that the debts due are $4,091,884, while the cash and receivables are $2,456,187. Can the company, by the honest use of credit, meet its debts? A glance at its *Page 178 
balance sheet would indicate that it could. But there are other facts to be noted. The approaching maturity of the bond issue has been, of course, continuously within the knowledge of defendant's managers and I must assume that they have made great efforts to raise the cash to pay the debt and have been unable to do so. On September 28th, 1932, they circularized the bondholders offering twenty-five per cent. in cash, provided the latter would consent to an extension of the remaining seventy-five per cent. for ten years more. On December 27th the company sent out another circular in which it stated that the first plan had not been made effective because insufficient bonds had been deposited. The company, in addition to its first offer, proposed in the alternative to pay in cash $550 for each $1,000 bond. The period for depositing bonds was extended until January 16th, 1933. The circular added: "If the company is not able to make such plan effective, the alternative is that the company will be forced into receivership." The affidavit filed in this cause by the defendant on January 9th, 1933, showed that approximately $1,250,000 of the bonds had not yet been deposited under the company's offer.
The defendant is in the business of making cars. Its customers almost exclusively are railroad companies who, since the commencement of the business depression, have purchased little, if any, new equipment. As a result, defendant has been operating at a deficit for some time. This has amounted, during 1931 and 1932, to about $100,000 a month. This situation probably explains why defendant is unable to borrow money to meet its current debts. There is no reason to expect, in the near future, an improvement in business conditions sufficient to restore defendant's credit or to enable defendant to operate at a profit.
The company is at present unable to meet its current obligations and is not likely to meet them in the near future. It is insolvent. I think that the interest of creditors and stockholders alike will be best served by recognizing the fact and by putting the company under the protection of the court. I will advise a decree pursuant to the prayer of the bill. *Page 179